**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **SCOTT PITTA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DINA MEDEIROS and BRIDGEWATER-RAYNHAM REGIONAL SCHOOL DISTRICT,**<br><br>**Defendants.** | ) | **Civil Action No.**<br>**22-11641-FDS** |

**MEMORANDUM AND ORDER**
**ON DEFENDANTS' MOTION TO DISMISS**

**SAYLOR, C.J.**

This lawsuit arises out of a dispute between a school district and the parent of a disabled child. Plaintiff Scott Pitta is the parent of a child who receives individualized education program ("IEP") services in the Bridgewater-Raynham Regional School District. After the District allegedly omitted certain facts from the official minutes of an IEP meeting, Pitta sought to video record future meetings with District staff. The District denied his request, citing its policy against video recording. Pitta then sued the school district and the Administrator of Special Education, Dina Medeiros, under 42 U.S.C. § 1983, alleging a violation of his First Amendment right to record government officials in the performance of their duties. He is proceeding *pro se*.

Defendants have moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons stated below, the motion will be granted.

## I. Background

### A. Factual Background

The facts are set forth as alleged in the complaint.

Scott Pitta is a resident of Bridgewater, Massachusetts, and the parent of a child who receives IEP services. (Compl. ¶¶ 1, 7).[1]

Dina Medeiros is the Administrator of Special Education for the Bridgewater-Raynham Regional School District. (*Id.* ¶ 8). The Bridgewater-Raynham Regional School District (the "District") is organized under Mass. Gen. Laws ch. 71, § 14B. (*Id.* ¶ 9).

On February 15 and March 8, 2022, Pitta met virtually with employees of the school district to discuss a new IEP for his child. (*Id.* ¶ 15). According to the complaint, District employees sought to remove his child from IEP-based special education services, but made several "statements of facts that were harmful to [their] argument" during the meetings. (*Id.* ¶ 16). For example, the employees allegedly admitted that they "had no data upon which to base their opinion," and that teachers whose evaluations of Pitta's child did not support removal from the IEP program had been asked to "'double check' their evaluation," while teachers whose evaluations supported removal were not asked to do the same. (*Id.*). The official meeting minutes e-mailed to Pitta on March 10, 2022, allegedly did not include those statements, despite "lengthy discussions" during the meeting. (*Id.* ¶ 17). The complaint alleges that Pitta "objected to the Defendants' minutes as an official record of the meetings and requested that the minutes

[1] "IEPs are 'comprehensive plan[s]' developed by the child's teachers, school officials, and parents" to ensure that disabled children receive a "free appropriate public education" under the Individuals with Disabilities Education Act ("IDEA"). *Parent/Pro. Advoc. League v. City of Springfield, Massachusetts*, 934 F.3d 13, 19 (1st Cir. 2019) (quoting *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 391 (2017)). At a minimum, "[e]ach IEP must include an assessment of the child's current educational performance, must articulate measurable educational goals, and must specify the nature of the special services that the school will provide." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005) (citing 20 U.S.C. § 1414(d)(1)(A)).

be amended to include the omitted portions of the meeting." (*Id.*). According to the complaint, the District refused to amend the meeting minutes. (*Id.* ¶ 18).

On September 20, 2022, Pitta attended another IEP meeting by "Google Meet." (*Id.* ¶ 1). Citing the District's earlier failure to produce accurate meeting minutes (allegedly in violation of 603 Mass. Code Regs. § 23.03), Pitta requested that the meeting be video recorded using the Google Meet recording function. (*Id.*). According to the complaint, the District denied his request on the basis that a video recording was "invasive" and against District policy. (*Id.*). However, the District permitted "an external audio recording operated and controlled" by its employees. (*Id.*). Pitta allegedly informed the meeting chair, Dina Medeiros, that because "school policy prevented her from making a video recording of the meeting, [he] would [] make his own recording." (*Id.*). Medeiros ended the meeting after Pitta refused to stop recording. (*Id.*).

On October 3, 2022 (after the complaint in this case was filed), Medeiros sent an e-mail to Pitta indicating that the District had "figured out a way to accommodate [his] request to know who is speaking while the meeting is being audio recorded." (Defs' Mem. Ex. A at 4).[2] Medeiros proposed that team members would participate with their cameras off, but when a participant spoke, their identity would be indicated by lighting around the box containing their name on the screen. (*Id.*). Pitta agreed to the meeting, and it was scheduled for October 21, 2022. (*Id.* at 2).

[2] On a motion to dismiss, the court may properly take into account four types of documents outside the complaint without converting the motion into one for summary judgment: (1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). The Court will consider the e-mails attached to defendants' memorandum as documents of undisputed authenticity.

### B. Procedural Background

In the meantime, on September 28, 2022, Pitta filed the complaint in this case, alleging a claim under 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments. Specifically, the complaint alleges that the District's policy prohibiting parents from video recording IEP meetings "violates the First Amendment by causing [Pitta] to refrain from constitutionally protected information gathering." (Compl. ¶ 24). The complaint seeks declaratory and injunctive relief.[3]

Defendants have moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[4] Medeiros has also moved to dismiss the complaint against her in her individual capacity for insufficient service of process under Fed. R. Civ. P. 12(b)(5).

## II. Legal Standard

On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (quoting *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1st Cir. 1993)). When ruling on a 12(b)(1) motion, the court "must credit the plaintiff's well-[pleaded] factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010).

On a motion to dismiss made pursuant to Rule 12(b)(6), the court "must assume the truth

---

[3] The complaint is unclear as to whether plaintiff also seeks monetary damages.

[4] Defendants frame their argument that plaintiff failed to exhaust administrative remedies as a jurisdictional issue. The First Circuit does not appear to have addressed the question of whether failure to exhaust administrative remedies under the IDEA is an issue of subject-matter jurisdiction, or an affirmative defense to be addressed on the merits. *See Weber v. Cranston Pub. Sch. Comm.*, 245 F. Supp. 2d 401, 410 n.8 (D.R.I. 2003) (collecting cases addressing the issue under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)). Regardless of how that issue is characterized, defendants have also moved to dismiss for mootness, which raises an issue of subject-matter jurisdiction.

of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

Because plaintiff is proceeding *pro se*, the complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); *see also Instituto De Educacion Universal Corp. v. United States Dep't of Educ.*, 209 F.3d 18, 23 (1st Cir. 2000). Where the court cannot ascertain the nature and basis of any legitimate claims, however, it is under no obligation to rewrite the pleadings on his behalf. *See Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 Fed. App'x 274, 276-277 (11th Cir. 2008) ("While a trial judge is to employ less stringent standards in assessing *pro se* pleadings than would be used to judge the final product of lawyers,

this leniency does not permit the district court to act as counsel for a party or to rewrite deficient pleadings." (alterations and citation omitted)).

## III. <u>Analysis</u>

Defendants have moved to dismiss the complaint on three grounds: (1) mootness; (2) failure to exhaust administrative remedies under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*; and (3) failure to state a claim for violations of the First Amendment. For the reasons set forth below, the complaint presents a live case or controversy, and plaintiff's claim is not subject to the exhaustion requirement under the IDEA. Nevertheless, the complaint fails to state a claim under the First Amendment and will be dismissed on that basis.

### A. <u>Mootness</u>

Because "[f]ederal courts lack jurisdiction to decide moot cases," the first question is whether plaintiff's claims for injunctive and declaratory relief have been rendered moot by the IEP meeting held after the filing of the complaint. *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983).[5] "The doctrine of mootness enforces the mandate 'that an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed.'" *American Civ. Liberties Union of Mass. ("ACLUM") v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 52 (1st Cir. 2013) (quoting *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003)). "Simply stated, a case is moot when the issues presented are no longer 'live' or the

---

[5] While "[i]t is settled law that a claim for monetary relief . . . may survive events that moot injunctive or declaratory relief," the complaint is unclear as to whether plaintiff seeks monetary damages. *Town of Portsmouth, R.I. v. Lewis*, 813 F.3d 54, 60 (1st Cir. 2016). And a claim for attorneys' fees and costs, which plaintiff does assert, is "insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Harris v. University of Massachusetts Lowell*, 43 F.4th 187, 193 (1st Cir. 2022) (quoting *Davidson v. Howe*, 749 F.3d 21, 27 n.7 (1st Cir. 2014) and citing 13C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 3533.3 n.75 (3d ed.)).

parties lack a legally cognizable interest in the outcome." *Id.* (quoting *D.H.L. Assocs., Inc. v. O'Gorman*, 199 F.3d 50, 54 (1st Cir. 1999)). "A party can have no legally cognizable interest in the outcome of a case if the court is not capable of providing any relief which will redress the alleged injury." *Gulf of Maine Fisherman's All. v. Daley*, 292 F.3d 84, 88 (1st Cir. 2002).

The complaint seeks a declaration "that the Defendant's prohibition on parents' video recording IEP team meetings is unconstitutional," as well as an order "permanently enjoining Defendants from preventing or interfering with Plaintiffs or others who are lawfully present, from video recording government officials engaged in their official duties." (Compl. at 7-8). Defendants contend that plaintiff's case is moot because they voluntarily provided "precisely the result that he asks this Court to impose via an injunction" when they hosted a video-recorded IEP meeting after the filing of the complaint. (Defs.' Mem. at 12). Plaintiff does not dispute that he was eventually allowed to video record the IEP meeting. (Pl.'s Opp'n at 7). However, the District policy prohibiting recording apparently remains in place, and plaintiff states that IEP meetings "must occur, at a minimum, annually." (*Id.*).

A one-time exception to an allegedly unconstitutional policy does not moot a First Amendment claim because (among other reasons) the court could grant further relief by enjoining the District from enforcing the policy in the future, or issuing a declaratory judgment on the policy's constitutionality.

Furthermore, at least one exception to the mootness doctrine potentially applies here. The voluntary-cessation exception applies where a "'defendant voluntar[ily] ceases the challenged practice' in order to moot the plaintiff's case, and there exists 'a reasonable expectation that the challenged conduct will be repeated following dismissal of the case.'" *Town of Portsmouth, R.I. v. Lewis*, 813 F.3d 54, 59 (1st Cir. 2016) (quoting *ACLUM*, 705 F.3d at 54-

56)). Here, the fact that the District offered to host a video-recorded meeting shortly after the complaint was filed at least plausibly suggests that their actions were made in response to the pending litigation. *See id.* (noting that the exception "ordinarily does not apply where the voluntary cessation occurred for reasons unrelated to the litigation," such as when a policy expires according to a predetermined schedule). And because the policy against video recording is apparently still in effect, defendants cannot meet "the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *ACLUM*, 705 F.3d at 55 (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 US 167, 190 (2000)).[6]

Accordingly, the motion to dismiss on the basis of mootness will be denied.

**B. Failure to Exhaust Under IDEA**

Defendants next contend that the complaint alleges a "quintessential IDEA" claim that plaintiff was required to exhaust by administrative review prior to filing suit in this court.

**1. The IDEA**

The IDEA conditions the provision of federal funds to public schools on compliance with a requirement to provide all disabled children with a "free appropriate public education" ("FAPE"). *See Parent/Pro. Advoc. League v. City of Springfield*, 934 F.3d 13, 19 (1st Cir. 2019) (citing 20 U.S.C. § 1412(a)(1)). "As defined in the Act, a FAPE comprises 'special education and related services'—both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 158 (2017) (quoting 20 U.S.C. § 1401(9), (26), (29)). The Individualized

[6] It is also possible that the exception applicable to matters that are "capable of repetition yet evading review" applies here. The harm resulting from any individual, unrecorded IEP meeting could arguably be "too short to be fully litigated prior to its cessation," and it is not unreasonable to expect that plaintiff may suffer the same injury again. *See Doe v. Hopkinton Pub. Sch.*, 19 F.4th 493, 511 (1st Cir. 2021).

Education Program ("IEP") is the IDEA's primary means for assuring the provision of a FAPE to disabled children. *Id.* "[T]he services offered in an IEP amount to a FAPE if they are 'reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances.'" *C.D. by & through M.D. v. Natick Pub. Sch. Dist.*, 924 F.3d 621, 624-25 (1st Cir. 2019) (quoting *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017)).

If a dispute arises between parents and a school district concerning the application of IDEA to a particular child, the statute requires the state to convene an impartial hearing. 20 U.S.C. § 1415(f)(1)(A). "Hearing officers can grant substantive relief, such as reimbursement for private school tuition or an order that a school district must offer the student an appropriate educational program." *Parent/Prof'l Advocacy League*, 934 F.3d at 19-20 (citing *School Comm. of Burlington v. Department of Educ. of Mass.*, 471 U.S. 359, 370 (1985)). "But relief may only be granted 'based on a determination of whether the child received a [FAPE].'" *Id.* (quoting 20 U.S.C. § 1415(f)(3)(E)(i)).

**2. <u>The Exhaustion Requirement</u>**

In Massachusetts, the hearings required by the IDEA are conducted by the Bureau of Special Education Appeals ("BSEA"). *See* Mass. Gen. Laws ch. 71B, § 3; 603 Mass. Code of Regs. 28.08(5); *see also Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 988 (1st Cir. 1990). The BSEA's administrative decision is reviewable in either state or federal court. *See* 20 U.S.C. § 1415(i)(2)(A). However, before such an action may be brought, the party seeking review must exhaust all administrative procedures under the IDEA. 20 U.S.C. § 1415(l); *see also Parent/Prof'l Advocacy League*, 934 F.3d at 20.[7]

[7] IDEA's exhaustion provision reads:

The exhaustion requirement "is not limited to claims based directly upon violations of the IDEA"; it also applies to civil actions brought under other federal laws, "so long as the party is seeking relief that is available under subchapter II of [the] IDEA." *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 59 (1st Cir. 2002) (quoting *Rose v. Yeaw*, 214 F.3d 206, 210 (1st Cir. 2000)). Exhaustion is therefore required "if the relief sought is from the denial of a free appropriate public education"—the only remedy available under the IDEA. *Doucette v. Georgetown Pub. Sch.*, 936 F.3d 16, 18 (1st Cir. 2019) (citing 20 U.S.C. § 1415(l)); *see also Fry*, 580 U.S. at 166. In effect, "plaintiffs may not use § 1983—or any other federal statute for that matter—in an attempt to evade the limited remedial structure of the IDEA." *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 29 (1st Cir. 2006). However, if a suit seeks redress for a school's conduct that injures the plaintiff "in ways unrelated to a FAPE," then the exhaustion requirement does not apply. *Fry*, 580 U.S. at 168-69. Furthermore, exhaustion is only required for suits brought under other federal statutes to the extent that a plaintiff seeks relief that is also available under the IDEA. *Luna Perez v. Sturgis Pub. Sch.*, 143 S. Ct. 859, 864 (2023) (holding that the exhaustion requirement did not preclude suit for compensatory damages under the Americans with Disabilities Act, because damages are not available under IDEA).

To determine whether a lawsuit seeks relief for the denial of a FAPE, "a court should look to the gravamen of the plaintiff's complaint—not the labels used in it." *Doucette*, 936 F.3d at 23 (quoting *Fry*, 580 U.S. at 165, 169) (internal quotation marks and alterations omitted). The

---

> Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).

Supreme Court has identified two "clues" to help courts perform that inquiry:

> The first clue comes from the answers to a pair of hypothetical questions: (1) could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school? and (2) could an *adult* at the school have pressed essentially the same grievance? When the answer to each question is no, the complaint probably does concern a FAPE. On the other hand, if the answers are yes, a FAPE is unlikely the true subject of the complaint. The second clue involves the history of the case; a plaintiff's previous invocation of the IDEA's formal procedures may provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE.

*Id.* at 23-24 (quoting *Fry*, 580 U.S. at 171-73) (internal quotation marks and alterations omitted).

**3. <u>The Gravamen of the Complaint</u>**

Here, while plaintiff's claim arises out of the District's conduct during an IEP meeting, the gravamen of the complaint is not the denial of a FAPE—it is the alleged infringement of plaintiff's First Amendment rights. Defendants construe the complaint as seeking relief for procedural violations under the IDEA, which permits a hearing officer to find that a FAPE is inadequate based upon conduct that "significantly impeded the parents' opportunity to participate in the decisionmaking process." 20 U.S.C. § 1415(f)(3)(E)(ii). However, the fact that the "same conduct might violate [multiple] statutes" does not mean that exhaustion is required for all non-IDEA claims. *Fry*, 580 U.S. at 171. And the crux of the complaint is whether the alleged procedural inadequacy—the District's failure to allow video recording—is constitutional. That is a question for which the BSEA's "specialized knowledge" in education is inapplicable, and which the federal courts are well-equipped to decide. *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 60 (1st Cir. 2002).

The "clues" identified in *Fry* support the conclusion that exhaustion is not required here. Plaintiff could have brought a similar First Amendment claim had he been denied the opportunity to record public officials in a different public space. *See Fry*, 580 U.S. at 171. And plaintiff not only could, but does, bring suit to enforce his *own* rights, rather than the rights of his

child. *See id.* Finally, nothing in the complaint indicates that plaintiff previously invoked the formal procedures of IDEA in response to defendants' actions. *Id.* at 173. Those factors indicate that plaintiff does not seek relief for the denial of a FAPE. Therefore, he was not required to seek administrative relief from the BSEA prior to filing suit in this court. *See E.T. ex rel. Doe v. Bureau of Special Educ. Appeals of the Div. of Admin. L. Appeals*, 91 F. Supp. 3d 38, 51 (D. Mass. 2015) (holding that exhaustion was not required for section 1983 claims alleging violations of the Fourth and First Amendments).

Accordingly, the motion to dismiss for failure to exhaust administrative remedies will be denied.

**C. <u>First Amendment</u>**

Finally, defendants contend that the complaint fails to state a claim for violation of the First Amendment.

The first question is whether the conduct plaintiff seeks to engage in—recording the IEP meeting—is protected under the First Amendment. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985). The First Circuit held in *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011), that the protections of the First Amendment "encompass[] a range of conduct related to the gathering and dissemination of information," including "[t]he filming of government officials engaged in their duties in a public place." *Id.* at 82 (holding that a private citizen had a First Amendment right to peaceably film police officers performing an arrest in Boston Common).

There are several reasons to question whether the principles of *Glik* extend to the facts of this case. First, as defendants point out, it is highly doubtful that an IEP meeting—particularly one held by videoconference—qualifies as a "public space." While the First Circuit did not clearly define "public space" in *Glik*, it later indicated that that term includes—but is not

coextensive with—"traditional" public forums such as public parks, streets, sidewalks, as well as the hallway of a town hall following an open public meeting. *Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 827 (1st Cir. 2020).

The IEP meeting in this case took place on an online videoconferencing platform apparently accessible only to school officials and parents (here, only plaintiff himself). The subject of the meeting was to discuss the learning capabilities of an individual child and whether he was disabled. Normally, that is a highly private and sensitive subject. That context is a far cry from a "traditional" public forum, such as "parks, streets, sidewalks, and the like." *Minnesota Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018). And even if the school, rather than the video platform, were the relevant location, a public school during school hours is generally considered to be a non-public forum, unless opened to the public by policy or practice. *Worthley v. School Comm. of Gloucester*, 2023 WL 371034, at *4 (D. Mass. Jan. 24, 2023).

Second, while *Glik* clearly held that law-enforcement officers are "public officials" whose actions the public has an interest in recording—at least when acting within their official duties—the court did not define who else might fall within that category. *See Glik*, 655 F.3d at 84 (noting that "police officers are expected to endure significant burdens caused by citizens' exercise of their First Amendment rights"); *see also Iacobucci v. Boulter*, 193 F.3d 14, 24 (1st Cir. 1999) (recognizing a First Amendment right to film local historic district commissioners). And it is not clear from the complaint who—other than Administrator Medeiros—attended the IEP conference, or why the public would have a comparable interest in their actions.

Finally, it is uncertain whether a right to record exists where an individual seeks to gather, but not publicly distribute, information about government officials. The court in *Glik* reasoned that the right to record received First Amendment protection because "[g]athering

information about government officials in a form that can readily be disseminated to others" promotes "the free discussion of governmental affairs" and "aids in the uncovering of abuses." *Glik*, 655 F.3d at 82 (quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966)). Other courts that have recognized a right to record have framed it as "specifically, a right to record matters of public interest." *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000); *see also Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (acknowledging a "right to film matters of public interest").

Here, plaintiff apparently seeks to use the recording primarily for his own purposes, rather than to expose government misconduct to the public. (Compl. ¶ 13 (noting that it is "necessary to create an accurate record of all statements made during an IEP team meeting" that "may be admitted as evidence in subsequent administrative and legal appeals")).[8] The fact that the recording is of limited public interest lessens the First Amendment value of plaintiff's speech. *Pollack v. Regional Sch. Unit 75*, 12 F. Supp. 3d 173, 199 (D. Me. 2014) ("At a minimum, *Glik* stands for the principle that producing a recording with a plan to share it with others can be a communicative act and carries at least some First Amendment protection.").

If there is additional authority supporting the proposition that plaintiff had a First Amendment right to record the meeting, it has not been brought to the attention of the Court. Under the circumstances, the Court concludes that plaintiff does not possess a First Amendment right to video record a private meeting with school district officials concerning the suitability of an IEP for his minor child. Accordingly, the First Amendment claim will be dismissed for failure to state a claim.

[8] The complaint does quote *Glik* in noting that recordings can aid in uncovering official abuses and promote discussion of governmental affairs, but it does not allege any specific intent to use the recordings of the IEP meetings for a purpose beyond plaintiff's own affairs.

**D. Fourteenth Amendment**

In addition to the First Amendment claim, the complaint also states that "[t]he Fourteenth Amendment [] guarantees due process and prohibits states from denying to any person 'the equal protection of the laws,'" and generally alleges that defendants have violated plaintiff's Fourteenth Amendment rights. (Compl. ¶¶ 22, 25). The complaint does not provide further detail on how his due process rights have been infringed, or how he has been denied equal protection of the laws. Furthermore, plaintiff in his opposition memorandum states that the complaint "raise[s] a single cause of action against the defendant, a deprivation of first amendment rights." (Pl.'s Opp'n at 2). Accordingly, the Fourteenth Amendment claim will be dismissed for failure to state a claim.

**E. Service of Process**

Medeiros seek to dismiss the complaint against her in her individual capacity for failure to effect proper service under Fed. R. Civ. P. 4(e) or Mass. R. Civ. P. 4(d)(1).

Under Fed. R. Civ. P. 4(e), service upon an individual may be effected by (1) "following state law [here, Massachusetts]"; (2) "delivering a copy of the summons and of the complaint to the individual personally"; (3) "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"; or (4) "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." The rules under Massachusetts law track the federal rules: service upon an individual may be made personally, at the individual's place of abode, or upon an authorized agent. Mass. R. Civ. P. 4(d)(1).

Plaintiff has filed affidavits of service indicating that a summons and complaint for Dina Medeiros was left with Judy MacDougall, Executive Secretary to the Superintendent, at the school office in Bridgewater on September 29, 2022. Plaintiff has not shown that MacDougall

was an authorized agent for Medeiros in her individual capacity, or that any other attempt at service was made. Accordingly, it appears that Medeiros was not properly served in her individual capacity, and that claim will be dismissed against her on that basis, pursuant to Fed. R. Civ. P. 12(b)(5). *See Perez-Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 106 (1st Cir. 2008) (finding that service upon agent for defendants in their official capacity was not sufficient for service upon defendants in their individual capacity).

## IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court

Dated: May 19, 2023